UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

|  |  |
|---|---|
| CADE WALLMAN, <br><br> Plaintiff, <br><br> vs. <br><br> DOMINIC WIENEKE d/b/a WARWOLF PRODUCTIONS and EZEKIEL RICHTER, <br><br> Defendants. | 4:25-CV-04036-KES <br><br><br> AMENDED ORDER GRANTING MOTION TO DISMISS AND DENYING REQUEST TO CONSIDER SUPPLEMENTAL AUTHORITY AS MOOT |

Defendants, Dominic Wieneke d/b/a Warwolf Productions, and Ezekiel Richter, move to dismiss plaintiff, Cade Wallman's, complaint under Federal Rule of Civil Procedure 12(b)(6). Docket 6. Defendants also move this court to consider supplemental authority from the Second Circuit in support of their motion. Docket 11. Wallman opposes both motions. Docket 9; Docket 13. The court issues the following order.

**ALLEGED FACTS**

When reviewing a motion to dismiss under Rule 12(b)(6), this court accepts the facts alleged in the complaint as true and construes all reasonable inferences in the light most favorable to the plaintiff. *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008); *Cathedral Square Partners Ltd. P'ship v. S.D. Hous. Dev. Auth.*, 966 F. Supp. 2d 862, 867 (D.S.D. 2013). The facts as alleged in the complaint are:

In 2022, Richter approached Wallman, a camera operator and filmmaker, to film various scenes for a series Richter and Wieneke were putting together. Docket 1 ¶¶ 10-11. The series was called "Last Stop: The Series." *Id.* Wallman "personally recorded various scenes" for the Last Stop, which involved him making "key decisions such as angle, panning, framing, focus, depth of field, [and] placement of main subjects in relation to objects or individuals in the background." *Id.* ¶ 16. Additionally, during various stages of filming, Wallman was "in front of the camera, and his image and likeness were recorded as an 'extra' in the background of various shots." *Id.* ¶ 18.

Wallman completed this work on weekends or outside of normal business hours. *Id.* ¶ 15. Wallman did not sign a contract or employment agreement with Richter, Wieneke, or Warwolf Productions (Warwolf), *id.* ¶¶ 12-13, nor did he receive compensation for any of the work he performed during the creation of Last Stop, *id.* ¶ 14. All filming was done on a data storage media device provided by defendants, and Wallman was not permitted to retain any copies of this footage. *Id.* ¶ 19. While he was not permitted to keep any copies, Wallman alleges that he "owns the copyright to all the footage that he recorded and thereby fixed into a tangible medium of expression." *Id.* ¶ 17.

As filming for the Last Stop progressed, Wallman "became dissatisfied with [the Last Stop] and the direction that [d]efendants were taking it," and no longer wanted to associate with defendants or the Last Stop. *Id.* ¶ 20. In July of 2022 (by text message) and January of 2023 (by letter), Wallman "explicitly told Wieneke and Warwolf . . . that they were not allowed to use scenes that he

personally filmed and that they were not allowed to use his likeness." *Id.* ¶ 21. To the best of Wallman's knowledge, this written notice was made to defendants prior to the final editing of the Last Stop. *Id.* Additionally, once Wallman left the project, he was not provided with the "original materials that he had created through his artistic decisions and for which he owns the common law copyright." *Id.* ¶ 22.

In February of 2025, Wallman became aware that defendants used footage filmed by Wallman and footage of Wallman's likeness in its production of the Last Stop. *Id.* ¶¶ 23-24. Wallman also learned that his footage and likeness would be used during the Last Stop's public showings and would be part of a planned DVD/Blu-ray release of the Last Stop. *Id.* Defendants sold tickets to two separate public showings of the Last Stop and at a convention where both Richter and Wieneke were listed as "creators." *Id.* ¶ 28. Upon learning of the unauthorized use, on February 12, 2025, Wallman's counsel sent a cease-and-desist letter to defendants and defendants' counsel. *Id.* ¶ 25. Wallman also later confirmed that several scenes that were personally filmed by Wallman were used by defendants in the promotional materials for the Last Stop. *Id.* ¶ 26.

Because Wallman alleges that his footage and likeness were used without his authorization or approval, *see id.* ¶ 27, Wallman filed this suit against defendants on March 6, 2025, *see id.* In his complaint, Wallman brought two federal claims for copyright infringement and violating the Digital Millennium

3

Copyright Act (DMCA), *id.* ¶¶ 30-46, and he brought one state-law claim for the unauthorized use of likeness, *id.* ¶¶ 47-54.

**LEGAL STANDARD**

A court may dismiss a complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court's assessment of whether the complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**DISCUSSION**

Defendants move to dismiss Wallman's copyright infringement and DCMA claims for failure to state a claim under Rule 12(b)(6). Docket 6. Defendants also request that the court decline to exercise supplemental jurisdiction over Wallman's unauthorized use of likeness claim if the two federal-law claims are dismissed. *Id.* The court addresses defendants' arguments in turn.

## I.   Copyright Infringement

Defendants argue that Wallman's claim for copyright infringement should be dismissed because Wallman has failed to allege that his copyright is

4

registered or preregistered with the U.S. Copyright Office.[1] Docket 7 at 4. Wallman concedes that a copyright has not yet been registered but argues that the lack of registration should be excused because Wallman is unable to register a copyright when defendants refuse to turn over the video footage. Docket 9 at 1-2. Wallman also argues that if this court is inclined to grant defendants' motion to dismiss, it should alternatively order defendants to turn over the footage prior to any dismissal. *Id.* at 2.

Copyright protection attaches to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). "An author gains 'exclusive rights' in [their] work immediately upon the work's creation." *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 300-01 (2019) (quoting 17 U.S.C. § 106). "The Copyright Act entitles a copyright owner to institute a civil action for infringement of those exclusive rights." *Id.* at 301; *see also* 17 U.S.C. § 501(b). To prevail on a claim of copyright infringement under the Copyright Act, a plaintiff must show "(1) ownership of a valid copyright and (2) copying of original elements of the copyrighted work." *Warner Bros. Entm't v. X One X Prods.*, 644 F.3d 584, 595 (8th Cir. 2011) (citation omitted).

---

[1] Defendants attempt to put forth a second ground explaining why Wallman's copyright infringement claim should be dismissed for failure to state a claim in its motion to supplement. *See* Docket 11; Docket 12. But because the court finds that defendants' argument in their motion to dismiss is a sufficient ground to dismiss Wallman's claim, the court will not address this second ground. As such, the court denies defendants' motion for the court to consider supplemental authority as moot.

But "[b]efore pursuing an infringement claim in court . . . a copyright claimant generally must comply with [17 U.S.C.] § 411(a)'s requirement that 'registration of the copyright claim has been made.' " *Fourth Est. Pub. Benefit Corp.*, 586 U.S. at 301 (quoting 17 U.S.C. § 411(a)). Thus, "although an owner's rights exist apart from registration, . . . registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Id.* While there are some limited circumstances when a copyright claimant may file an infringement lawsuit before a copyright is registered, these circumstances only exist where the copyright claimant has taken steps to preregister the copyright. *See id.* (identifying instances when a copyright claimant can proceed with their lawsuit prior to registration through preregistration); *see also* 17 U.S.C. § 411(a). But even in these limited circumstances, the copyright claimant "must eventually pursue registration in order to maintain a suit for infringement." *Fourth Est. Pub. Benefit Corp.*, 586 U.S. at 301-02.

Here, Wallman's complaint fails to allege that his claimed copyright is registered or preregistered. *See* Docket 1. Wallman acknowledges that he has not applied for registration under 17 U.S.C. § 411(a). *See* Docket 9 at 1-2, 6-7 (asking the court not to dismiss the case "so that Wallman may register his copyright"). The lack of copyright registration alone is sufficient to find that Wallman has failed to state a claim for copyright infringement. *See, e.g., Wright v. Penguin Random House*, 783 Fed. App'x 578, 583 (6th Cir. 2019) (finding plaintiff failed to state a claim for copyright infringement where plaintiff failed

6

to allege that she maintained a copyright registration or copyright preregistration); *Dowbenko v. Google Inc.*, 582 Fed. App'x 801, 805 (11th Cir. 2014) (holding that a plaintiff failed to state a claim for copyright infringement because plaintiff's allegations did not satisfy § 411(a)'s registration requirements); *Bus. Audio Plus, L.L.C. v. Commerce Bank, NA*, 2011 WL 250670, at *2 (E.D. Mo. Jan. 26, 2011) ("Because [plaintiff] fails to allege . . . the existence of a valid copyright registration . . . [p]laintiff fails to meet § 411(a)'s statutory prerequisite, and thus cannot maintain its infringement claim."). Thus, the court concludes that dismissal of Wallman's copyright infringement claim is warranted under Rule 12(b)(6).

While Wallman argues that this court should alternatively order that defendants must turn over the claimed copyrighted footage so that Wallman can move forward with registration, *see* Docket 9 at 1-2, 4, Wallman fails to point to, and the court is unaware of, any caselaw that would permit the court to ignore § 411(a)'s command that "no civil action for infringement of the copyright . . . shall be instituted until preregistration or registration of the copyright claim has been made," 17 U.S.C. § 411(a). And as defendants note, Congress has carved out certain exceptions to the registration requirement, none of which apply in Wallman's case. *See* Docket 10 at 5 (citing the Visual Artists Rights Act which permits certain claims to proceed "even if classified as 'civil actions' for copyright infringement"). Because "it is not for the courts to undermine legislative intent by carving out exceptions that Congress did not choose to make," *Hutchinson Tel. Co. v. Fronteer Directory Co. of Minn., Inc.*, 770

F.2d 128, 132 (8th Cir. 1985), the court rejects Wallman's argument that it should order defendants to turn over the footage in order to provide Wallman with the opportunity to sufficiently plead a claim for copyright infringement. Thus, the court grants defendants' motion to dismiss Wallman's claim for copyright infringement under Rule 12(b)(6).

## II.    Digital Millenium Copyright Act

Defendants argue that Wallman's claim under the DMCA should be dismissed because "Wallman has not plausibly alleged a factual circumstance in which his identifying information was attached to the footage and then removed." Docket 7 at 7. Section 1202(b) of the DMCA provides that

> No person shall, without the authority of the copyright owner or the law—
>
> (1)    intentionally remove or alter any copyright management information,
> (2)    distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
> (3)    distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b). Copyright management information includes a variety of information, such as "[t]he name of, and other identifying information about, the author of a work" and "information set forth in a notice of copyright." 17 U.S.C. § 1202(c).

8

Wallman alleges in the complaint that "[t]he videographic images created by Wallman and used by [d]efendants without authorization bear no indication of the author of the same and were integrated into a larger work so as to conceal the author." Docket 1 ¶42. Wallman also alleges that because he did not receive credit in the Last Stop's public showings, defendants violated the DMCA by "intentionally distributing and/or publicly displaying or performing work containing videographic images which were created by Wallman, for which Wallman owns the rights under copyright law, where copyright management information . . . has been removed without Wallman's authorization." *Id.* ¶¶ 43-44.

In their motion to dismiss, defendants argue that Wallman's complaint does not allege that the footage he filmed had copyright management information attached to it. *See* Docket 7 at 7-9; *see also* Docket 1. Wallman admits in his complaint that he never possessed the footage because it was filmed on defendants' "data storage media" devices and Wallman never received a copy of the footage. Docket 1 ¶¶ 19, 22. And Wallman did not respond to defendants' motion to dismiss the DMCA claim. *See* Docket 9.

Based on the allegation in the complaint, the court agrees with defendants that Wallman or a third party "never had the opportunity to stamp a watermark or other identifying information on the footage in question." Docket 7 at 9. And without copyright management information present on the footage, Wallman's DCMA claim fails because there was no copyright management information for the defendants to knowingly remove or alter. *See*

9

17 U.S.C. § 1202(b) (prohibiting the knowing removal or alteration of copyright management information). As such, the court grants defendants' motion to dismiss Wallman's DCMA claim under Rule 12(b)(6).

### III.    Unauthorized Use of Likeness

Defendants request that the court decline to exercise supplemental jurisdiction over Wallman's state-law claim in the event that the court dismisses Wallman's federal claims. *See* Docket 6; Docket 7 at 1. 28 U.S.C. § 1367(c) permits a district court to decline to exercise supplemental jurisdiction over pendent state-law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *see also Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). "If the claim[s] giving original jurisdiction [are] dismissed early in the action, 'before any substantial preparation has gone into the dependent claims, dismissing or remanding the [state claims] upon declining supplemental jurisdiction seems fair enough.' " *Gregoire v. Class*, 236 F.3d 413, 419 (8th Cir. 2000) (quoting 28 U.S.C. § 1367 cmt. at 835 (1993)). Additionally, courts should "exercise judicial restraint and avoid state[-]law issues whenever possible." *Thomas v. Dickel*, 213 F.3d 1023, 1026 (8th Cir. 2000) (internal quotation marks omitted).

Here, Wallman's claim is based on the "relatively new SDCL Chapter 21-64, which the South Dakota Supreme Court has never had occasion to address." Docket 7 at 11. Additionally, this case is at the motion to dismiss stage, no answer has been filed, and no discovery has been exchanged between the parties. Based on the early stage of these proceedings, and the novelty of

Wallman's state-law claim, the court declines to exercise supplemental jurisdiction over Wallman's state-law claim. Thus, the court grants defendants' motion to dismiss Wallman's unauthorized use of likeness claim.

## CONCLUSION

For the reasons above, it is

ORDERED that defendants' motion to dismiss (Docket 6) is granted. Plaintiff's Copyright Infringement Claim (Count I) and Unauthorized Use of Likeness Claim (Count III) are dismissed without prejudice. Plaintiff's Digital Millennium Copyright Act Claim (Count II) is dismissed with prejudice. It is

FURTHER ORDERED that that defendants' request to consider supplemental authority (Docket 11) is denied as moot.

Dated March 31, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE