UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CADE WALLMAN,<br><br>    Plaintiff,<br><br>  vs.<br><br>DOMINIC WIENEKE d/b/a WARWOLF PRODUCTIONS and EZEKIEL RICHTER,<br><br>    Defendants. | 4:25-CV-04036-KES<br><br>ORDER GRANTING MOTION FOR ATTORNEY'S FEES |

Defendants, Dominic Wieneke d/b/a Warwolf Productions and Ezekiel Richter, move for attorney's fees under 17 U.S.C. §§ 505 and 1203(b)(5), Federal Rules of Civil Procedure 54(d)(2), and Local Rule 54.1(c). Docket 20. Wieneke and Richter do not request costs. Docket 21. Plaintiff, Cade Wallman, opposes the motion. Docket 26. For the following reasons, Wieneke and Richter's motion is granted.

## BACKGROUND

On March 6, 2025, Wallman filed suit against Wieneke and Richter alleging Copyright Infringement under the Copyright Act of 1976 (17 U.S.C. § 505), a violation of the Digital Millennium Copyright Act (DMCA) under 17 U.S.C. § 1202, and Unauthorized Use of Likeness. Docket 1. Wieneke and Richter moved to dismiss the complaint, Docket 6, and the court granted the motion, Docket 15 at 11. Wallman's Copyright Infringement Claim (Count I) and DMCA Claim (Count II) were dismissed with prejudice, and his Unauthorized Use of Likeness Claim

(Count III) was dismissed without prejudice. *Id.* Judgment was entered in favor of Wieneke and Richter on February 2, 2026. Docket 16.

Wallman filed a motion to reconsider the court's dismissal of Count I with prejudice on February 3, 2026, "urg[ing] the [c]ourt to change the dismissal to be 'without prejudice,'" because the dismissal was based on a technical requirement, not on the case's merits. Docket 18 at 1. Wieneke and Richter did not object. Docket 21 at 3. The court granted Wallman's motion for reconsideration and entered an amended order and judgment granting the motion to dismiss Count I without prejudice. Docket 30; Docket 31; Docket 32.

On February 24, 2026, Wieneke and Richter moved for $22,008.68 in attorney's fees. Docket 20 at 1. An affidavit from Wieneke and Richter's attorney, Tim Shattuck, lists fees from March 12, 2025, to February 19, 2026; the work performed on those dates; the attorney who performed the work; the hourly rate; and the number of hours. *See* Docket 22-1 at 1-12.

Shattuck states that his hourly rate, based on his knowledge, is "in line with the prevailing market rates[,]" and that the discount he provided Wieneke and Richter reflects "the much smaller amount actually at stake in this litigation" and his clients' financial constraints. Docket 22 ¶¶ 8, 12. Shattuck's affidavit included fees for associate attorney, Drew Driesen, who performed work for Wieneke and Richter under Shattuck's supervision. Docket 22-1 at 1-12; Docket 23 ¶¶ 9-10. Like Shattuck, Driesen states that his hourly rate "is in line with the prevailing market rates." Docket 23 ¶ 9.

Wallman argues that Wieneke and Richter fail to meet the prevailing party standard for Counts I and III. Docket 26 at 1-2. Wallman states that, because two

2

of the three claims were dismissed without prejudice, "there has not been any determination or award *on the merits*[.]" *Id.* at 9. Thus, Wallman notes, Wieneke and Richter may be subject to future litigation on these same facts because "there has been no adjudication of the case on the merits[.]" *Id.* at 1. Wallman further contends that even if the court finds that Wieneke and Richter are the prevailing party and that Wallman's claims were unreasonable, this court should decline to award attorney's fees. *See id.* at 9-14. According to Wallman, if the court awards attorney's fees, "[t]hat amount would have to be reduced to *only* include the work done directly related to the DMCA portion of the claims brought by Plaintiff." *Id.* at 14.

In their reply, Wieneke and Richter allege that because Count II was dismissed with prejudice, "[t]hat is all that was required to make Wieneke and Richter prevailing parties." Docket 29 at 3. Also, Wieneke and Richter argue that attorney's fees are warranted given the weakness of Wallman's claims, Wallman's motivation for bringing the lawsuit, Wieneke and Richter's limited resources, the stakes of the litigation, and the extent of Wieneke and Richter's victory. *Id.* at 10. According to Wieneke and Richter, Wallman conflated the prevailing party prerequisite with the degrees of success obtained, resulting in an erroneous reduction from the lodestar calculation. *Id.* at 11. Because "the product of the lodestar calculation is entitled to a strong presumption of reasonableness[,]" Wieneke and Richter contend they are entitled to the requested $22,008.68. *Id.* at 2 (internal quotation marks omitted).

3

## LEGAL STANDARD

Under 17 U.S.C. § 505, a court may, in its discretion, "allow the recovery of full costs" and "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Similarly, under 17 U.S.C. § 1203(b)(5), a prevailing party may recover reasonable attorney's fees in an action brought under the DMCA. 17 U.S.C. § 1203(b)(5). A claim for attorney's fees must be made by motion pursuant to Federal Rules of Civil Procedure 54(d)(2) and in compliance with South Dakota Local Rule 54.1(c). Prevailing plaintiffs and prevailing defendants are to be treated alike, and any award is made within the court's broad discretion. *Fogerty v. Fantasy Inc.*, 510 U.S. 517, 534 (1994).

If the court determines that attorney's fees are appropriate, it must determine whether the requested fee is reasonable. The lodestar method provides a "useful starting point" and is calculated by multiplying a reasonable hourly rate by the reasonable number of hours worked. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court may adjust the fee award when considering the "results obtained" and other relevant considerations. *Id.* at 434.

## DISCUSSION

The threshold issue is whether Wieneke and Richter qualify as a prevailing party for purposes of 17 U.S.C. §§ 505 and 1203(b)(5). If so, the court must determine whether an award of attorney's fees is appropriate considering the factors identified in *Fogerty v. Fantasy Inc.,* 510 U.S. 517 (1994) and *Kirtsaeng v. John Wiley & Sons, Inc.,* 579 U.S. 197 (2016).

### I.     Whether Wieneke and Richter Qualify as a Prevailing Party

"In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Doe v. Nixon*, 716 F.3d 1041, 1048 (8th Cir. 2013) (internal quotation marks omitted). "An exception to this general rule applies when Congress has provided explicit statutory authority for awarding fees to a prevailing party." *Id.* Such exceptions are found in the Copyright Act and the DMCA, which provide that attorney's fees are only available to a prevailing party. *See* 17 U.S.C. § 505; 17 U.S.C. § 1203(b)(5).

A "prevailing party" is one who obtains "judicially sanctioned" relief that materially alters "the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001).[1] A party need not prevail on all claims; it is enough to prevail on a "single substantial claim." *Reel v. Ark. Dep't of Corr.*, 672 F.2d 693, 697 (8th Cir. 1982). Whether a party prevails on only some claims does not affect "prevailing party" status; rather, it is to be considered under the court's discretion in making an equitable judgment as to attorney's fees. *Hensley*, 461 U.S. at 438.

As for prevailing party status, Wieneke and Richter argue that they have met the required standard. *See* Docket 21 at 4-5. First, Wieneke and Richter argue that "[a]ll three claims against them were dismissed—on the grounds that they

---

[1] The term "prevailing party" is to be interpreted consistently whenever it is used by Congress in a fee-shifting statute. *See, e.g., CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 422 (2016) ("Congress has included the term 'prevailing party' in various fee-shifting statutes, and it has been the Court's approach to interpret the term in a consistent manner."); *Cody v. Hillard*, 304 F.3d 767, 773 n.3 (8th Cir. 2002) ("We agree with our sister circuits that *Buckhannon* applies broadly to fee-shifting statutes that employ the 'prevailing party' language.").

advanced in their briefing." *Id.* at 4. Second, they argue that "[a] final judgment was then entered in their favor" related to Count II and was unchallenged by Wallman. *Id.* at 4-5. Wieneke and Richter conclude that the final judgment on Count II is "all that was necessary to render the employee the prevailing party." Docket 29 at 4. Conversely, Wallman contends that Wieneke and Richter are not the prevailing party. Docket 26 at 1, 5-9. Wallman argues that defendants are "still a[t] risk of further legal action" concerning copyright infringement because the "bulk" of the claims were dismissed without prejudice. *Id.* at 5. Wallman thus concludes that Wienke and Richter cannot be the prevailing party because the legal relationship between the parties has not changed. *Id.* at 5, 9.

Wieneke and Richter point to *Shrader v. OMA Aluminum Boat Group, Inc.*, 128 F.3d 1218 (8th Cir. 1997) in support of their argument that attorney's fees are justified here. Docket 29 at 4-5. In *Shrader*, the Eighth Circuit affirmed an award of attorney's fees where a plaintiff only succeeded on one of her three claims at trial. 128 F.3d at 1220. The Eighth Circuit reasoned that because the plaintiff received "actual relief on the merits" on her one claim, that was all that was necessary to find that the plaintiff was a prevailing party. *Id.* at 1221. In contrast, the Eighth Circuit affirmed the district court's denial of attorney's fees in *Advantage Media, L.L.C. v. City of Hopkins, Minnesota*, 511 F.3d 833 (8th Cir. 2008), where the plaintiff was unsuccessful in showing that its claim established a "material alteration in the parties' legal relationship." *Id.* at 837. As such, the Eighth Circuit concluded that the plaintiff was not a prevailing party under § 1988. *Id.* at 838-39.

6

Here, Wieneke and Richter established prevailing party status because the court dismissed Count II with prejudice. *See* Docket 29 at 3. Although Wieneke and Richter attempt to frame their prevailing party status in the "conventional sense" by arguing that the court dismissed all claims for the reasons they advanced, they need not establish that level of success. Docket 21 at 4. Rather, they need only show that they received a judicially sanctioned ruling on the merits that altered their legal relationship with Wallman. *See Buckhannon*, 532 U.S. at 604-05. While Wallman challenges defendants' prevailing party argument, he omits any discussion of the court's dismissal of Count II with prejudice and instead bases his prevailing party argument on case law that is inapposite because it involved no judgment on the merits of any claim. *See* Docket 26 at 5-9. Because the court dismissed Count II with prejudice, Wieneke and Richter obtained the requisite material alteration in the parties' legal relationship. *See Shrader*, 128 F.3d at 1221. Thus, Wieneke and Richter are the prevailing party.

## II.    Whether Attorney's Fees Should be Awarded

When a party has achieved some degree of success on the merits, a court may use its discretion to award reasonable attorney's fees after considering the "nonexclusive factors" identified by the Supreme Court. *Killer Joe Nevada, LLC v. Does 1-20*, 807 F.3d 908, 911 (8th Cir. 2015). These factors include "whether the lawsuit was frivolous or unreasonable, the losing litigant's motivations, the need in a particular case to compensate or deter, and the purposes of the Copyright Act." *Id.* In exercising that discretion, courts should give significant weight "to the objective reasonableness of the losing party's litigating position[,]" although it is not controlling. *Kirtsaeng*, 579 U.S. at 199-200. The purposes of the Copyright Act

7

are advanced when attorney's fee awards promote the proper enforcement of copyright rights, consistent with the Act's objectives of enriching the public through access to creative works, rewarding authors' creative efforts, and enabling subsequent creators to build on existing works. *Id.* at 203-04; *see also Fogerty*, 510 U.S. at 526-27 ("[C]opyright law ultimately serves the purpose of enriching the general public through access to creative works[.]").

Wallman argues that even if the court finds Wieneke and Richter to be the prevailing party, the award of attorney's fees is inappropriate, permissive, and not mandatory under 17 U.S.C. § 505 and 17 U.S.C. 1203(b)(5). Docket 26 at 9-10. Wallman contends "[t]hat means in any given case a court may . . . deny fees even though the losing party made unreasonable [arguments]." *Id.* at 10 (internal quotation marks omitted). Wieneke and Richter agree with Wallman that while "there is no 'precise rule' for exercising this discretion[,]" they argue that "every pertinent factor supports a fee award." Docket 29 at 5.

The first factor considers whether Wallman's lawsuit was frivolous or objectively reasonable. *Killer Joe Nevada, LLC,* 807 F.3d at 911. This factor must be given substantial weight. *Kirtsaeng*, 579 U.S. at 205-09 (reasoning that this factor "encourages parties with strong legal positions to stand on their rights and deters those with weak ones from proceeding with litigation"). Wallman did not have a registered or preregistered copyright for the footage at issue in Count I, a necessary element to bring a viable cause of action. *See* Docket 1 (omitting any allegation that Wallman registered or preregistered the copyrighted work before filing this lawsuit); Docket 21 at 2; 17 U.S.C. § 411(a). Wallman argued that bringing this suit to obtain the footage was reasonable because "it was the only

8

position he could take due to Defendants holding the subject work hostage."
Docket 26 at 13.

But as the Supreme Court explained in *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296 (2019), registration under the Copyright Act must be completed "before suing to enforce ownership rights." *Id.* at 301. In granting Wieneke and Richter's motion to dismiss, the court held that "[t]he lack of copyright registration alone is sufficient to find that Wallman has failed to state a claim for copyright infringement." Docket 15 at 6. The court also concluded that Wallman never had the opportunity to attach identifying information to the footage at issue in Count II, despite his allegation that his copyright information was removed or altered without his consent. *See id.* at 9. Thus, it was unreasonable for Wallman to bring a claim under the Copyright Act when the Supreme Court explicitly found that a plaintiff must pre-register or register a copyright before filing suit. *Fourth Est. Pub. Benefit Corp.*, 586 U.S. at 301. The court finds that this factor weighs strongly in favor of Wieneke and Richter.

The second factor considers Wallman's motivation for bringing this lawsuit. *Killer Joe Nevada, LLC*, 807 F.3d at 911. Wallman claimed that he brought this lawsuit to "try and obtain [the footage at issue] from Defendants." Docket 26 at 11. He explicitly stated in his opposition that he "was motivated by a desire to protect his rights in the copyrighted material." *Id.* at 12. Wieneke and Richter believe Wallman's lawsuit was brought in retaliation against Richter following a "trivial workplace disagreement." Docket 21 at 9. Wallman filed a discrimination complaint with the South Dakota Division of Human Rights. *Id.* After the Division determined that the allegations were unfounded, Wallman then filed this lawsuit.

9

*Id.* Because there are conflicting explanations about what motivated this legal action, this factor is neutral.

The third factor considers the need for compensation and deterrence. *Killer Joe Nevada, LLC*, 807 F.3d at 911. Wieneke and Richter incurred significant expenses defending claims that could not succeed because Wallman lacked a valid copyright interest in the footage at issue and did not have identifying information on the footage for it to be removed. *See* Docket 22-1. Absent an award of attorney's fees, Wieneke and Richter would bear the full expense of defending claims that lacked an essential legal and factual basis. An award of attorney's fees compensates Wieneke and Richter and deters parties from filing copyright actions that lack the requisite elements to succeed on their claims. Thus, this factor weighs in favor of Wieneke and Richter.

The fourth factor considers the purposes of the Copyright Act. *Killer Joe Nevada, LLC*, 807 F.3d at 911. Here, an award of attorney's fees would further the purposes of the Copyright Act by encouraging litigants to confirm that they possess enforceable rights under the Copyright Act before initiating infringement litigation. *See Fogerty*, 510 U.S. at 526-27. Such an award promotes the proper enforcement of copyright law and discourages the assertion of claims by parties who lack the legally required registration to maintain an action for copyright infringement. Thus, this factor favors Wieneke and Richter.

Considering all the relevant factors, the court concludes that an award of attorney's fees is warranted. The objective unreasonableness of Wallman's claims weighs heavily in favor of a fee award, while the motivation factor is neutral. The compensation, deterrence, and Copyright Act purpose factors all favor Wieneke

and Richter. Thus, the court finds that an award of reasonable attorney's fees is appropriate under Fed. R. Civ. Pro. 54(d)(2) and 17 U.S.C. §§ 505 and 1203(b)(5).

### III.    Award Determination

#### A.    Reasonable Attorney's Fees: Lodestar Method

Because the court determined that an award of attorney's fees is appropriate, it must now determine a reasonable fee award. The Supreme Court of the United States has made it clear that the lodestar method is the preferred method for calculating reasonable attorney's fees under federal fee-shifting statutes. *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 556 (1986) (using lodestar method to calculate attorney's fees under § 304(d) of the Clean Air Act); *City of Burlington v. Dague*, 505 U.S. 557, 565-67 (1992) (using lodestar method to calculate reasonable attorney's fees under the Clean Water Act and the Resource Conservation and Recovery Act). Where Congress has authorized an award of attorney's fees to a prevailing party, the court should "determine 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.' " *Simpson v. Merchs. & Planters Bank*, 441 F.3d 572, 580 (8th Cir. 2006) (quoting *Hensley*, 461 U.S. at 433). The court presumes the lodestar is a reasonable fee. *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988).

#### B.    Reasonable Hourly Rate

The first phase of the lodestar analysis requires the court to determine the reasonable hourly rate for the attorney's services. *Hensley*, 461 U.S. at 433. The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of comparable skills, experience, and reputation. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "The burden is on

11

the moving party to prove that the request for attorneys' fees is reasonable." *Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc.*, 2023 WL 1825078, at *1 (D.S.D. Feb. 8, 2023) (quoting *Atmosphere Hosp. Mgmt., LLC. v. Curtullo*, 2015 WL 1097324, at *1 (D.S.D. Mar. 11, 2015)). The court has "broad discretion" when considering the fee amount. *Black Hills Clean Water All. v. United States Forest Serv.,* 733 F. Supp. 3d 801, 805 (D.S.D. 2024) (quoting *Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095 (8th Cir. 2012)).

Here, Wieneke and Richter request attorney's fees for all legal services performed by Shattuck and Driesen related to the preparation and prosecution of the motion to dismiss, *see* Docket 6; Docket 7, the motion for attorney's fees, *see* Docket 20, and the response to Wallman's motion to reconsider, *see* Docket 25; Docket 22 ¶ 9. Wieneke and Richter request $22,008.68 in attorney's fees, which excludes fees related to the motion to consider supplemental authority and reflects a $4,692.82 discount as a courtesy by Shattuck. Docket 22 ¶¶ 9, 11-12, 15. According to Shattuck and Driesen's invoices, they expended 83.9 hours on this record. *See* Docket 22-1. Based on the requested fee amount and the hours billed, the fees reflect a combined hourly rate of approximately $262.32. *See* Docket 22 ¶¶ 12, 15; Docket 22-1. Wallman did not contest Shattuck's or Driesen's hourly rate within the lodestar calculation. Docket 26 at 17.

The District of South Dakota has recently found the hourly rate of $400 reasonable for an attorney with 47 years' experience. *Black Hills Clean Water All.*, 733 F. Supp. 3d at 813. Also, in assessing reasonable attorney's fees for out-of-state counsel, courts in this district have evaluated the requested rates against

12

those charged by similarly qualified and well-experienced South Dakota attorneys, approving rates from $360 to $500 per hour. *Curran v. Haaland*, 2024 WL 129073, at *7 (D.S.D. Jan. 10, 2024).

Here, Shattuck has 32 years of experience and provides services at an hourly rate of $465. Docket 22 ¶¶ 3-8. Driesen has nearly 4 years of experience, is an associate attorney, and provides services at an hourly rate of $275. Docket 23 ¶¶ 3-9. The combined hourly rate of $262.32 is less than the traditional hourly rates of both attorneys, and Wallman did not contest either rate. Thus, the court finds the hourly rate reasonable.

### C.     The Number of Hours Spent on Litigation

The court's task under the second phase of the lodestar test is to determine whether the amount of time defendants' attorneys spent on this litigation was "reasonably expended." *See Hensley*, 461 U.S. at 434. Courts are charged with excluding from awards of attorney's fees hours that were not "reasonably expended." *Id.*

Here, Wieneke and Richter state in their brief that because the requested amount only considers the fees charged to defendants, and not the fees the attorneys incurred, it "constitutes a substantial downward deviation from the lodestar." Docket 21 at 13. They request to be compensated for a total of 83.9 hours associated with this lawsuit—19.1 hours billed by Shattuck and 64.8 hours billed by Driesen. *See* Docket 22-1 at 4, 7, 12. Wallman objects to Wieneke and Richter's requested attorney's fees because he argues that defendants may only recover attorney's fees related to Count II. Docket 26 at 17. Wallman argues that if the court awards attorney's fees, it should be "significantly reduced" from the

13

requested $22,008.68 and kept to an amount "reasonably related to the DMCA claim[]." *Id.*

The court should not employ a mechanical claim-counting approach based solely on the number of claims on which a party prevailed. *Phelps-Roper v. Koster*, 815 F.3d 393, 398–99 (8th Cir. 2016). Rather, the court must consider the party's overall degree of success and whether the claims share a common core of facts or rest on related legal theories. *Id.* Conversely, when a plaintiff presents distinguishable claims "based on different facts and legal theories[,]" the "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.' " *Hensley*, 461 U.S. at 434-35 (quoting *Davis v. Cnty. of Los Angeles*, 1974 WL 180, at *3 (C.D. Cal. June 5, 1974).

Here, Wallman argues that any fee award should be limited to Count II because "[t]he claims of copyright infringement, D[MC]A violations, and unauthorized use of likeness brought by Plaintiff are all unique claims that have their own legal arguments." Docket 26 at 15. Also, because Counts I and III were dismissed without prejudice, Wallman contends that Wieneke and Richter should not be entitled to attorney's fees attributable to those claims. *Id.* In response, Wieneke and Richter argue that Wallman improperly conflates the question of whether they are the prevailing party with the separate question of the extent of their success for the purposes of determining a reasonable fee award. Docket 29 at 11. The court agrees with Wieneke and Richter.

Although Wallman's claims arose under different legal theories, all three claims were premised on the same footage, the parties' respective rights and obligations regarding it, and the same nucleus of operative facts. Wieneke and

14

Richter's work throughout the litigation—including their motions to dismiss and for attorney's fees—therefore required consideration of substantially overlapping facts and issues, making much of the work performed by Shattuck and Driesen not readily divisible. Because Wieneke and Richter successfully obtained dismissal of all asserted claims, and because those claims shared a common factual basis, the court finds that including the hours spent on all three claims is reasonable. Thus, the court finds that the 83.9 hours expended were reasonably incurred throughout this litigation and that no reduction in the requested hours is warranted.

## CONCLUSION

Because Wieneke and Richter achieved some degree of success on the merits and the dismissal of all claims against them, an award of attorney's fees is appropriate. Shattuck and Driesen's compensation must be limited to what is reasonable, which includes the services directly related to Claims I, II, and III and the motions to dismiss and for attorney's fees. For the reasons above, it is

ORDERED that Wieneke and Richter's Motion for Attorney's Fees (Docket 20) is granted. Wieneke and Richter are entitled to a judgment in their favor in the amount of $22,008.68 for attorney's fees.

Dated June 24, 2026.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

15